**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA

  - v. -

ALAN KAUFMAN, and
TONY GEORGITON,

                  Defendants.

No.19 Cr. 504 (CM)

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE INDICTMENT

McMahon, C.J.:

Defendants Alan Kaufman and Tony Georgiton are charged in a four-count indictment

with various offenses stemming from two alleged bank bribery schemes.

Count One charges Kaufman and Georgiton with violations of 18 U.S.C. § 371, for

conspiring to confer gifts on Kaufman from in or about 2010 through in or about 2015, in

exchange for Kaufman's: (i) personally approving loans from his employer, Melrose Credit

Union ("Melrose"), to Georgiton; (ii) personally approving favorable refinancing for over $60

million of Georgiton's pre-existing loans from Melrose; and (iii) arranging for Melrose to pay

over $2 million to a company owned by Georgiton for naming rights to a ballroom in Queens,

New York.

Count Two charges Kaufman with corruptly soliciting and demanding certain benefits,

the value of which exceeded $1,000, "with the intent to be influenced" in connection with the

actions set forth in Count One, in violation of 18. U.S.C. § 215(a)(2). Those benefits included:

(i) permission to live rent-free in a house Georgiton purchased in Jericho, New York, for over

1

two years beginning in November 2010 (the "Jericho Residence"); (ii) an unsecured personal loan from Georgiton to Kaufman on February 1, 2013, which Kaufman used to purchase the Jericho Residence from Georgiton, and which Kaufman never repaid.

Count Three charges Georgiton with providing Kaufman the benefits set forth in Count Two, in violation of 18. U.S.C. § 215(a)(1).

Count Four charges Kaufman in a separate bribery scheme, also in violation of 18. U.S.C. § 215(a)(2), alleging that, from in or about 2010 through in or about 2015, Kaufman solicited or agreed to accept lavish vacation and other gifts from a media company located in New York, New York ("Media Company-1"), in exchange for Kaufman's approval of increased advertising spending by Melrose with Media Company-1.

Now pending before this Court is Defendant Kaufman's pretrial motion to dismiss Counts One, Two and Four of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), for failure to state an offense. On March 6, Georgiton joined Kaufman's motion in full with respect to Count One, and moved to dismiss Count Three relying on the same arguments Kaufman made with respect to Count Two. (Dkt. No. 92.)

The Defendants' motions are denied.

## BACKGROUND

The Indictment alleges as follows:

### A. Factual Background

At all times relevant to the Indictment, Kaufman was the Chief Executive Officer and Treasurer of Melrose, a chartered federal credit union with 20,000 members and approximately $1.1 billion in assets. (*See* Indictment, Dkt. No. 1, at ¶ 1. ) During the same period, Georgiton was a member and customer of Melrose. (*Id.* ¶ 3.)

### 1. The First Bribery Scheme

On or about November 30, 2010, Georgiton purchased the Jericho Residence, a property selected by Kaufman, for $630,000. (*Id.* ¶ 8). Georgiton allowed Kaufman to live in the Jericho Residence rent-free for over two years. (*See id.*).

During the time that Kaufman was living in the Jericho Residence, he approved the favorable refinancing of tens of millions of dollars in loans that Melrose had extended to companies owned by Georgiton. (*See id.* ¶¶ 9-10). For example, on or about June 27, 2011, Kaufman approved the refinancing of over $60 million worth of loans held by Georgiton's companies at Melrose, including a cash loan of approximately $5 million. The loan financing terms provided for a favorable 4.5% interest rate and a 50-year amortization period. (*Id.* ¶ 9.) The head of Melrose's loan department objected to this refinancing arrangement, and others, as being "too favorable." (*Id.* ¶ 11.)

In addition, on September 27, 2011, while continuing to reside in Georgiton's house, Kaufman presented a proposal to the Melrose Board of Directors for the credit union to purchase naming rights for a ballroom under construction in Astoria, Queens (the "Melrose Ballroom") for $2 million. Kaufman failed to disclose that he was living in the Jericho Residence rent-free at the time he sought approval for the naming rights agreement, even though Georgiton stood to benefit from the deal through his ownership of the ballroom, (*Id.* ¶ 12.) The Board agreed to purchase the naming rights for the Melrose Ballroom on certain conditions, including that no payments be made before the ballroom was completed. Yet Kaufman ignored that condition, issuing the first payment to Georgiton's company in December 2012, before construction was finished. (*Id.* ¶ 13.) Furthermore, Melrose's marketing director had told Kaufman that the naming rights had minimal value to Melrose, perhaps $50,000 as compared to the $2 million Kaufman proposed to the Board. (*Id.* ¶ 14.)

Lastly, on or about February 1, 2013, Kaufman purchased the Jericho Residence for $630,000 – the same price that Georgiton had paid to acquire the house over two years earlier. (*Id.* ¶ 16). Kaufman was only able to close on the property with Georgiton's help in the form of a $200,000 loan from Melrose that was co-signed by Georgiton and secured by Georgiton's shares at Melrose. (*Id.*) Georgiton also contributed a $240,000 unsecured persona loan unsecured by a promisory note, for which Georgiton never demanded repayment, and which Kaufman never repaid. (*Id.*) Kaufman did not inform the Melrose Board that Georgiton had helped him with two loans to purchase the home. (*Id.* ¶ 17.)

### 2. The Second Bribery Scheme

Separately, from in or about 2010 through in or about 2015, Kaufman accepted lavish vacations and other gifts worth tens of thousands of dollars from a media company located in New York, New York ("Media Company-1"), in exchange for Kaufman's approval of increased advertising spending by Melrose with Media Company-1. (*Id.* ¶ 26.) Kaufman did not disclose to the Melrose Board of Directors that Kaufman accepted the trips and gifts paid for by Company-1. (*Id.*) The trips paid for by Company-1 were to vacation destinations – including France, Hawaii, and New Orleans – and Kaufman was accompanied on each trip by his girlfriend. (*Id.* ¶¶ 26,27.) Kaufman did not seek approval for these vendor-paid trips from the Melrose Board of Directors, nor did he disclose trips to the them, in violation of Melrose's Anti-Bribery Policy. (*Id.* ¶ 30).

### B. Procedural Background

#### 1. Defendant's First Motion to Dismiss

Kaufman first moved to dismiss Counts One, Two, and Four on October 2, 2019, while this case was pending before colleague, the Hon. Lewis Kaplan. First, Kaufman argued that Counts One and Two should be dismissed because the Indictment failed to allege that "Mr.

4

Kaufman received something of value as required to state an offense for bribery," failed to establish a timeline from which the court could infer that Kaufman "accepted the housing arrangement 'in connection with' [Melrose] business," and lacked allegations sufficient to support the requisite corrupt intent. (Dkt. No. 29 at 1.) Further, Kaufman argued, *inter alia*, that Count Four failed to show that the trips paid for by Media Company-1 were not "day to day business" protected by the safe-harbor provision of 18 U.S.C. § 215(c). Kaufman also argued that venue was improper since "all of the charged conduct is alleged to have taken place in either the Eastern District of New York . . . or in other states and countries." (*Id.* at 2.)

Judge Kaplan summarily denied Kaufman's first motion to dismiss on November 5, 2019, "substantially for the reasons set forth in the government's opposition." (Dkt. No. 38.) The court adopted the Government's position that Kaufman's motion was not challenging the sufficiency of the allegations regarding the value received from Georgiton, Kaufman's intent, and the nature of the benefits conferred by Media Company-1, but rather was an improper attempt to dispute the merits of the case. Judge Kaplan therefore held that the Indictment contained allegations sufficient to raise "questions[s] of fact for the jury, and not . . . proper ground[s] for a motion to dismiss." (Dkt. No. 34 at 19.)

### 2. *United States v. Silver*

Kaufman's present motion follows from the recent decision by the Second Circuit Court of Appeals in *United States v. Silver*, 948 F.3d 538 (2d Cir. 2020).

Sheldon Silver, former Speaker of the New York State Assembly, was convicted of accepting illegal bribes, in violation of the mail fraud statute, the wire fraud statute, and the Hobbs Act. *Id.* at 545. Since Silver was an elected representative, the Government was required to prove the elements of bribery set out in 18 U.S.C. § 201, which applies to public officials and "requires [proof of] a *quid pro quo*" to sustain a conviction. *U.S. v. Ganim*, 510 F.3d 134, 148

5

(2d Cir. 2007). As applied to the recipient of the bribe – Silver in that case – the Government had to present evidence that: (i) Silver was a public official who "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity" – the *quid*; (ii) in return for "being influenced in the performance of any official act" – the *quo*. 18 U.S.C. § 201(b)(2).

Silver appealed, urging that the definition of "official act" given to the jury was erroneous. The district court instructed the jury to find that Silver had taken an official act – which it defined as "any action taken or to be taken under color of official authority," *Silver*, 947 F.3d at 546 – if they found that he had accepted payments in exchange for his promise to take action "for the benefit of the payor . . . as the opportunit[ies] arose," *Silver*, 948 F.3d at 559. Silver argued that this instruction – and the "as the opportunities arise" theory of *quid pro quo* writ large – could not survive the Supreme Court's decision in *McDonnell v. U.S.*, 136 S.Ct. 2355, 195 L.Ed.2d 639 (2016), which narrowed the interpretation of "official act" in Section 201 to a decision or action taken on a "specific and focused" question or matter. *Id.* at 2372.

Silver sought reversal of his conviction on the ground that an official who promises to act in the payor's interest "as opportunities arise" does not promise to deliver any particular *quo* "at the time the official accepts a payment or makes a promise." *Silver*, 948 F.3d at 545; *see McDonnell*, 136 S.Ct. at 2371 (denoting relevant inquiry for jury is "whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*") (italics in original). Silver's argument amounted to a claim that *McDonnell* forces the Government to prove that a public official promised a specific *quo* at the time he or she received the *quid.*

The Second Circuit agreed with Silver, but only in part. The Court of Appeals, accepted the premise that *McDonnell* had narrowed, but not eliminated, the "as opportunities arise"

6

variety of *quid pro quo* arrangements. The court ruled that the Government had to prove that the official promised "to act *on* an identified 'question, matter, cause, suit proceeding, or controversy'" at the time the official accepts the bribe. *Silver*, 948 F.3d at 556 (quoting *McDonnell*, 136 S.Ct. at 2368) (emphasis in original). In other words, *Silver* interprets *McDonnell* to preclude conviction where the evidence shows only that the official promised at the time of the payment to take action on some question or matter that might in the future benefit the payor– "a promise so vague as to be meaningless." *Silver*, 948 F.3d at 556. For the evidence to support the necessary *quo* under Section 201, it must establish that the official promised to take action on a "focused, concrete and specific" question or matter at the time he received the bribe. *Id.* at 556-57.

### 3. Defendants' Second Motion to Dismiss

On February 7, 2020, less than three weeks after the Second Circuit decided *Silver*, Kaufman filed the pending motion to dismiss the Indictment on the grounds that the Government failed to allege that Kaufman "promised to be influenced on a 'specific and focused' business matter or transaction." (Dkt. No. 79, Def.'s Br. at 1.)

Kaufman claims that the Indictment only alleges that he was influenced with respect to "a variety of credit union matters," none of which he contemplated when he first began living in the Jericho Residence in November of 2010. (*Id.* at 1-2.) According to Kaufman, the Government fails to offer sufficient support for this Court to infer a *quid pro quo* under *Silver*, because, "None of the *quo* allegations in the Indictment are alleged to have been a particular matter that Mr. Kaufman corruptly promised to Mr. Georgiton, let alone understood, in 2010." (*Id.* at 9.)

Kaufman also asks for dismissal of Count Four, relating to Media Company-1, for similar reasons, contending that the Indictment fails to allege that he accepted lavish trips intending to be

7

influenced with regard to "a specific, particular business or transaction" involving the Company. (*Id.* at 10.)

Finally, Kaufman claims that the Government's gratuity theory with respect to all counts is deficient as a matter of law, "because it alleges the conveyance of a thing of value – rent-free use of the Jericho Residence – *before* Mr. Kaufman allegedly conferred a benefit to Mr. Georgiton." (*Id.* at 12 (emphasis in original).) In Kaufman's view, a bank official may only be tried under the gratuities prong of Section 215 when the charging papers establish that the official received the reward after taking the corrupt action in question.

After repeating its argument, raised in opposition to the first motion to dismiss, that Kaufman raises fact questions not resolvable prior to trial, the Government rejected Kaufman's foundational premise that either *McDonnell*, *Silver*, or Section 201 has any bearing on the sufficiency of charges brought under Section 215. The Government argues that the text of Section 215 does not include an "official act" requirement, and therefore the "specific and focused question or matter" analysis on which Kaufman hangs his motion is inapposite to this case. (Dkt. No. 89 at 14.) Furthermore, the Government underscores that Section 215 applies to private employees of financial institutions, so the constitutional considerations regarding federalism and representative democracy that animated the Supreme Court's decision to narrow the scope of Section 201 in *McDonnell* do not compel the same narrow interpretation in the context of a different statute. (*Id.* at 15-16.) Finally, the Government argues that it may attempt to prove a gratuity theory of improper influence based on rewards received by Kaufman either before or after his improper acts. (*Id.* at 17.)

8

## DISCUSSION

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

Because "federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (internal quotation marks and citations omitted). "A defendant faces a 'high standard' in seeking to dismiss an indictment." *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) (quoting *United States v. Saliba*, 2010 WL 680986, at \*2 (E.D.N.Y. Feb. 24, 2010)).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). In evaluating a motion to dismiss, the Court "accept[s] as true all of the allegations of the indictment." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). But in order "to satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (internal quotation marks and citation omitted). Put differently, "the indictment need only allege the 'core of criminality' the Government intends to prove at trial, since the indictment is 'read ... to include facts which are necessarily implied by the specific allegations made.' " *United States v. Budovsky*, 2015 WL 5602853, at \*3 (S.D.N.Y. Sept. 23, 2015) (alteration in original) (quoting *United States v. Rigas*, 490 F.3d 208, 229 (2d Cir. 2007)). An indictment "need not be perfect, and common sense and

9

reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

Moreover, "[i]t is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995); *see also United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). "The rationale is that the crime of conspiracy is complete whether or not the substantive offense which was its object was committed." *Wydermyer*, 51 F.3d at 325.

A motion to dismiss an indictment is not an occasion to evaluate the sufficiency of the Government's evidence. Rule 12(b), which governs criminal pretrial motions, provides only that "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion" (emphasis added). "In other words, there is no 'summary judgment' equivalent to Rule 56 of the Federal Rules of Civil Procedure in criminal cases." *United States v. Cremer*, No. 12 Cr. 473 (KBF), 2012 WL 6681700, at *2 (S.D.N.Y. Dec. 13, 2012) (citing *Alfonso*, 143 F.3d at 776-77); *United States v. Elie*, No. S3 10 Cr. 0336 (LAK), 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) (discussing the "well established principle" that "there is no summary judgment in criminal cases."). Accordingly, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment. *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998).

## II. PUBLIC SECTOR BRIBERY PRECEDENT DOES NOT CONTROL IN PRIVATE SECTOR BRIBERY CASES

The question raised by the motion is whether Kaufman, the agent of a private financial institutions charged under 18 U.S.C. § 215, may rely upon cases interpreting a statute that

10

criminalizes the bribery of public officials, 18 U.S.C. § 201. For the reasons that follow, this Court sees no reason to intermingle the independent bodies of law dealing with public and private corruption.

To begin with, Defendants' claim that the "official act" requirement of Section 201 applies to charges brought under Section 215 is contrary to the plain language of that statute. The text of Section 215 says nothing about "official acts." Rather, to make out a *quid pro quo* charge against an employee of a financial institution, the Government need only show that Kaufman accepted a *quid* while "intending to be influenced or rewarded in connection with *any* business or transaction of [the financial institution]." 18 U.S.C. § 215(a)(2) (emphasis added). There is no reference to any particular "*quo*." *Id.* Therefore, the Court is loath to apply the "official acts" jurisprudence to Section 215—a statute that plainly imposes different pleading and evidentiary requirements on the Government than those imposed by Section 201.

But the matter has already been decided for me, since the Second Circuit has already refused to apply the *McDonnell* interpretation of "official acts" – which, by definition, may only be taken by public officials – in the context of private sector bribery. In *United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019), the real estate developer defendant was convicted under the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78fd-2, 78dd-3, as well as the statute prohibiting bribery concerning programs receiving federal funds, 18 U.S.C. § 666, for paying two foreign ambassadors to boost reputation of his convention center in Macau. *Id.* at 117. Seng argued that the district court should not have permitted the prosecution to argue "that the *quid pro quo* elements of § 666 and the FCPA are not limited to 'official acts' as defined in the general bribery statute, *see* 18 U.S.C. § 201(a)(3)," because that instruction led the jury to find a *quid pro quo* without proof of a specific *quo*. *Id.* at 129.

11

The appellate court affirmed Seng's conviction, noting that Congress was perfectly capable of defining "the particular *quids* and *quos*" applicable under different bribery statutes, which explains why "not all federal bribery statutes identify 'official act[s],' must less official act[s] as defined in § 201(a)(3), as the necessary *quo* for bribery." *Id.* at 132 (emphasis in original). The Second Circuit reasoned that because the Supreme Court's analysis in *McDonnell* simply interpreted "official act" as defined in Section 201, that case "does not necessarily delimit the *quo* components of other bribery statutes, such as § 666 or the FCPA." *Id.* at 133; *see also United States v. Boyland*, 862 F.3d 279, 291 (2d Cir. 2017) (declining to apply *McDonnell*, noting the § 666 is "more expansive than § 201").

Defendants have no answer for the Second Circuit's reasoning in *Ng Lap Seng*. Instead, they claim that *Ng Lap Seng* is irrelevant, because the pending motion "do[es] not rely on the 'official act' jurisprudence of *McDonnell v. United States*." (Dkt. No. 90, Reply at 1.) In their telling, *Silver* is both dispositive of the pending motion and did not turn on *McDonnell*'s "official act" requirement. However, Defendants ignore the fact that the parties in *Silver* "agreed to define bribery by reference to 18 U.S.C. § 201(b)(2)(A)." *Silver*, 948 F.3d at 551. So, even though the Government charged Silver with bribery under a number of different statutes, it stipulated that each charge against Silver required proof of an "official act."

The Government has made no such concession in this case. The reasons why are not limited to statutory interpretation and precedent; they also sound in public policy.

The Government need not allege that Kaufman agreed to undertake a particular "official act" to benefit Georgiton, because Kaufman is a private citizen whose prosecution does not raise the same constitutional concerns that justify the outcomes in *McDonnell* and *Silver*. McDonnell was the governor of Virginia, while Silver was the former speaker of the New York House of

12

Representatives. Their prosecutions therefore raised the specter of federal prosecutors violating principles of federalism, which provide states with significant leeway "to regulate the permissible scope of interactions between state officials and their constituents." *McDonnell*, 136 S.Ct. at 2373. Both *McDonnell* and *Silver* make clear that a narrow construction of "official acts" as defined in Section 201 is necessary to avoid criminal prosecution of "any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be in a position to act favorably to the giver's interests," which might amount to the United States Attorney "setting standards of good government for local and state officials." *Silver*, 948 F.3d at 567-68 (internal quotation marks, emphasis, and citations omitted).

Such prosecutions would also interfere with the core operations of a representative democracy. As the Supreme Court explained in *McDonnell*, criminalizing any action by a state official that benefits a particular constituent just because that constituent has given something of value in the past to the official – even when that something could be as innocuous as an ordinary course campaign contribution conditioned on no particular promise – would undermine, "The basic compact underlying representative government [which] assumes that public officials will hear from their constituents and act appropriately on their concerns." *McDonnell*, 136 S.Ct. at 2355.

There is no analogous constitutional principle or potential for interference with government functions that restrains the Government's application of Section 215 to "official acts." Accordingly, *Ng Lap Seng* makes clear that federal prosecutors may charge individuals in the private section without proof that those individuals intended to be influenced with regard to a "specific and focused" question or matter. Therefore, this Court shall not apply the Section 201

13

"official act" jurisprudence when interpreting the sufficiency of charges brought under Section 215.

## III.  THE MOTION TO DISMISS THE INDICTMENT IS DENIED.

### A.  Counts One, Two, and Three Adequately Allege Violations Under 18 U.S.C. § 371 and 18 U.S.C. § 215.

Count One of the Indictment charges Kaufman and Georgiton with conspiring to commit an offense against the United States, in violation of 18 U.S.C. § 371. The object of that alleged conspiracy was bribery of a financial institution employee, in violation of 18 U.S.C. § 215. This underlying substantive offense, which Kaufman is charged with in Count Two and Georgiton is charged with in Count Three, is the focus of the motion to dismiss.

Defendants ask that Counts One, Two, and Three be dismissed because "Allegations that Mr. Kaufman influenced . . . business transactions 'while' he was living rent-free, over a six-year period of time, are insufficient as a matter of law." (Dkt. No. 79, Def.'s Br. at 10.) Defendants claim that Indictment does not establish that Kaufman "intended to be subsequently influenced" with respect to "'a *specific and focused*' business matter" at the time he began living in the Jericho Residence, and therefore the Indictment fails to allege the requisite intent element necessary to charge Kaufman and Georgiton conspiracy and bribery. (*Id.* at 8 (quoting *Silver*, 948 F.3d at 568) (emphasis in original).)

This argument is based on a misstatement of the intent element of Section 215, under which all the Government must show is that Kaufman accepted "anything of value from any person, intending to be influenced . . . in connection with any business or transaction of [Melrose]." Neither the statute nor any case interpreting the statute requires proof that Kaufman accepted access to the Jericho Residence from Georgiton while simultaneously promising to act on a specific question or matter.

14

The Indictment sets out the elements of the statute under which the Defendants are actually charged, the timing of the offense, and the place of the alleged crime. The Government alleges that Kaufman "corruptly accepted and agreed to accept" rent-free access to the Jericho Residence from Georgiton "with the intent to be influenced" in connection with Georgiton's dealings with Melrose. (Indictment ¶ 23.) The Indictment states that this benefit, and others, accrued to Kaufman from "in or about 2010 through in or about 2015," and that some of the contact between Kaufman and Georgiton occurred in this district. Those allegations "track the language of the statute," which is all that is needed for the Indictment to withstand the motion. *Stringer*, 730 F.3d at 124.

Furthermore, Defendants objections are premature, since the sufficiency of intent allegations "cannot be considered on a motion to dismiss the indictment." *U.S. v. Percoco*, 16-cr-776 (VEC), 2017 WL 6314146, at *7 (S.D.N.Y. Dec. 11, 2017) (citing *U.S. v. Flaherty*, 295 F.3d 182, 198 (2d Cir. 2002)). Therefore, the motions to dismiss Counts One, Two, and Three are denied.

**B.      Count Four Adequately Alleges a Violation Under 18 U.S.C. § 215.**

Likewise, the motion to dismiss Count Four against Kaufman is denied.

Kaufman argues that dismissal is appropriate because "at the time the alleged bribes [from Media Company-1] were accepted (August 2010, January 2012 and 2013), Mr. Kaufman is not alleged to have influenced the specific, focused and concrete question or matter of . . . [Melrose's] increased advertising expenditure." (Dkt. No. 79, Def.'s Br. at 11.) But Count Four, like the first three counts, is sufficient if it sets forth the elements for a conviction under Section 215, which do not inlcude simultaneous intent to be influenced on a specific question or matter. It is enough to allege, as the Government does, that Kaufman accepted the lavish vacations with

15

the intention of acting in some way that would redound to Media Company-1's benefit, even if neither party knew the precise nature of the benefit at the time Kaufman accepted the paid trips.

The motion to dismiss Count Four is denied.

## C.    The Government's Gratuity Theory is Viable.

As an alternative to its bribery theory, the Government argues that it has sufficiently alleged the other available theory of culpability under Section 215 by charging the Defendants "with offering and accepting gratuities." (Dkt. No. 89, Gov. Br. at 17.) While *quid pro quo* bribery requires allegations of intent to influence or intent to be influenced, "illegal gratuity requires only that the gratuity be given or accepted 'for or because of'" some act by the recipient. *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398, 404 (1999). In other words, a gratuity is a reward for a corrupt course of conduct, while a bribe is designed to induce one.

Defendants argue that the Indictment fails to allege the gratuity theory "because it alleges the conveyance of a thing of value – rent-free use of the Jericho Residence – *before* Mr. Kaufman allegedly conferred a benefit to Mr. Georgiton or to any [Melrose] vendor." (Dkt. No. 79, Def.'s Br. at 12 (emphasis in original).)

However, it is not a requirement of the gratuity statute that the gratuity—the reward—be paid after the recipient's action in favor of the payor. The Second Circuit has made clear that a payor may confer an illegal gratuity either before or after the commission of a corrupt act: "An illegal gratuity . . . may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006) (citing *Sun-Diamond*, 526 U.S. at 404-5). The Government has adequately alleged both types of reward here: Kaufman received rent-free access to the Jericho Residence before approving loan and naming rights arrangements with

16

Georgiton's companies in June of 2011, September 2011, and October 2012 (Indictment ¶¶ 9, 10, 12); and he also allegedly received rent-free access and loans allowing him to purchase the residence outright in February 13, after he had helped Georgiton with new loans, the refinancing arrangement, and the naming rights agreement, (*id.* ¶ 16).

Defendants' motion to dismiss the gratuities theory is denied.

## CONCLUSION

Defendant's motion to dismiss (Dkt. No. 78) is DENIED.

The Clerk of Court is respectfully directed to close Docket Number 78. This constitutes the written decision and order of the Court.

Dated: March 25, 2020

_____

Chief Judge

BY ECF TO ALL PARTIES