UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


              -against-                                                  19-cr-0504 (LAK)


ALAN KAUFMAN,

                                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM AND ORDER


LEWIS A. KAPLAN, *District Judge.*

          Defendant, formerly chief executive officer of Melrose Credit Union ("MCU"),

awaits trial on two substantive counts of bribery in violation of 18 U.S.C. § 215 and one count of

conspiracy to commit bribery.   The matter is before the Court on motions *in limine* by the

government and by the defendant.


*The Government's Motion*

          The government moves *in limine* (1) to admit as direct evidence of the charged

conduct or, alternatively, under Fed. R. Evid. 404(b), (a) evidence of defendant's alleged disregard

of MCU's conflict of interest and bribery policies, (b) evidence of defendant's "lavish" meals and

trips with MCU vendors, (c) evidence of procedures for approving defendant's deferred

compensation plan, which allegedly violated New York banking law, and (d) evidence of allegedly

forged checks written by defendant from his codefendant Tony Georgiton's bank account, and (2)

to preclude (a) evidence of the valuation of naming rights for the Melrose Ballroom that is not

2

probative of defendant's state of mind, (b) evidence or argument concerning defendant's family background, health conditions, other personal factors unconnected to guilt or innocence and potential punishment in the event of conviction, and (c) evidence of defendant's prior commission of good acts and lack of prior bad acts.

1.    Evidence of MCU's bribery and conflict of interest policies, and defendant's alleged disregard of those policies in committing the charged conduct, is direct evidence of the charged offenses.  Among the elements of bribery is the existence of a corrupt intent.  18 U.S.C. § 215(a).  Moreover, Section 215(c) provides that the statute in question "shall not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business" and thus places on the government the burden of proving that defendant's actions did not fall within that exclusion.  In these circumstances, proof that defendant disregarded MCU's bribery and conflict of interest policies when he committed the charged conduct goes directly to the question of whether defendant acted with the requisite intent.  *See generally, e.g., United States v. Ng Lap Seng,* 934 F.3d 110, 142 (2d Cir. 2019) ("When a statute uses the word 'corruptly,' the government must prove more than the general intent necessary for most crimes. It must prove that a defendant acted 'with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.' *United States v. McElroy,* 910 F.2d 1016, 1021–22 (2d Cir. 1990); *see Arthur Andersen LLP v. United States,* 544 U.S. 696, 705, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) (stating that '"[c]orrupt" and "corruptly" are normally associated with wrongful, immoral, depraved, or evil' intent.").  Any risk that the jury might convict defendant simply on the basis that the defendant violated MCU's policies, as distinct from the relevant statutes, may be foreclosed by an appropriate instruction, which the Court would entertain if requested.

2.    Evidence of defendant's "lavish" meals and trips paid for by MCU vendors

3

is direct evidence of the bribery scheme charged in Count Four, which alleges that defendant "corruptly solicit[ed]," "accepted and agreed to accept . . . a thing of value greater than $1,000 from . . . vendors of [MCU] . . . with the intent to be influenced or rewarded in connection with business and a transaction of [MCU]." Indict. ¶ 32.  The government's proffered evidence that defendant repeatedly used Vendor-1's timeshare in Cabo San Lucas, Mexico and attended dinners "worth several hundred dollars" with – and paid for by – Vendor-2, *see* Dkt. 104 at 9-10, while steering MCU's business to Vendor-1 and Vendor-2, is direct evidence of this scheme.

3.      Moreover, evidence that defendant caused MCU to pay for over $20,000 of meals with Vendor-1 and Vendor-2, *see id.*, allegedly in violation of MCU policy, is admissible under Fed. R. Evid. 404(b) to prove intent or lack of mistake or accident.  Where, as here, defendant claims that he "acted in good faith and not with an unlawful intent," *see, e.g.*, Dkt. 60 at 6; Dkt. 113 at 14, other act evidence "is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (finding other act evidence admissible under Rule 404(b) where "it tended to rebut [defendant's] contention that he acted in good faith").  Evidence that defendant repeatedly violated MCU's bribery policies with respect to meals with vendors is highly probative of his intent to commit bribery in relation to such vendors, which outweighs any danger of unfair prejudice.

4.      Likewise, evidence of the procedures for approving defendant's deferred compensation plan, which allegedly violated New York banking law because it was not approved by a majority of MCU's directors, is admissible under Rule 404(b) to rebut defendant's contention that he acted in good faith.  Proof that such a plan – which defendant himself approved, *see* Dkt. 113 at 20 – violated state law is highly probative of whether defendant was acting with a bad or unlawful

4

purpose with regard to his dealings at MCU, which outweighs any danger of unfair prejudice.

5.      Defendant does not object to the introduction of evidence regarding the allegedly forged checks he wrote from Georgiton's bank account.  Instead, he argues that the Court should preclude the government from introducing evidence that these checks violated MCU policy and from referring to the checks as "forged."  Dkt. 113 at 21.  Both arguments are rejected.  As defendant appears to concede, the checks are direct evidence of the charged conduct.  Accordingly, as discussed above, evidence that defendant disregarded MCU policy when he wrote them is directly relevant to the issue of his intent.  Moreover, as discussed below, *see infra* ¶ 9, referring to these checks as "forged" would not be plainly inappropriate or unduly prejudicial.

6.      Evidence of the valuation of naming rights that was not known to the defendant at the time of the actions in question is not relevant and, even if it were, any probative value would be outweighed substantially by the risk of unfair prejudice resulting from jury confusion and waste of time.

7.      The Court anticipates that the parties will be able to reach a stipulation concerning the existence of a medical reason for the defendant's alleged tremor, so it would be premature to rule now on whether other evidence on that point should be received.  In all other respects, defendant is precluded from offering evidence or argument of the sort described in clause (2)(b) above.  Evidence of that character would invite the jury to determine the case on the basis of factors that are not relevant to guilt or innocence.

*The Defendant's Motion*

Defendant moves *in limine* to preclude the government from (a) introducing three reports relating to MCU's conservatorship and liquidation, (b) referring to the checks that

purportedly were signed with the name of Georgiton as the maker as "forgeries," (c) arguing or offering evidence in relation to the financial, personal, or professional impact of MCU's failure, and (d) using the term "rent free" in reference to defendant's use of the house in Jericho.

8.     The government does not intend to offer two of the three reports on its case in chief and indicates only that it might offer portions of the third (Document of Resolution ("DOR") for non-hearsay purposes.  Defendant's motion therefore is moot as to the documents other than the DOR.  It is denied as to the DOR without prejudice to objection at trial should the government then seek to offer portions of it.

9.     Neither the use of the word "forgery" in relation to the purported Georgiton checks nor of the phrase "rent free" in reference to defendant's use of the Jericho house would be plainly inappropriate, as either would be an arguably fitting colloquial characterization of the alleged conduct.  There would be no unfair prejudicial effect, and certainly not a substantial prejudicial effect, from either.

10.     The government does not seek to offer evidence as to the financial, personal or professional impact of MCU's failure on its members so defendant's motion to that extent is moot.  What remains boils down to an attempt to preclude evidence of the allegedly predictable financial consequences of defendant's allegedly corrupt actions to the financial stability of MCU. That goes much too far.  The government is entitled, within reason and without appealing to sympathy, to explain to the jury the full story of what allegedly happened here.  *Old Chief v. United States,* 519 U.S. 172 (1997).

*Conclusion*

Accordingly, the government's motion *in limine* (Dkt. 104) is granted in all respects

6

save that it is denied without prejudice insofar as it concerns evidence concerning the existence of

a medical reason for the alleged tremor.  The defendant's motion *in limine* (Dkt. 108) is denied, but

without prejudice to renewal at trial as indicated.

        SO ORDERED.

Dated:       January 6, 2021

                           Lewis A. Kaplan
                       United States District Judge