UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA

-against- 19-cr-0504 (LAK)

ALAN KAUFMAN,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

The Court previously ruled on motions *in limine* by the government and the defendant, who is the former chief executive officer ("CEO") of Melrose Credit Union ("MCU") charged with two counts of bank bribery in violation of 18 U.S.C. § 215(a)(2) and one count of conspiracy to commit bank bribery.[1] The defendant now moves for reconsideration insofar as the Court ruled, on the government's *in limine* motion, that three categories of evidence would be admissible at trial. For the following reasons, the defendant's motion for reconsideration is denied.

*I. Evidence Regarding Vacations and Meals from Vendor-1 and Vendor-2*

Count Four of the indictment charges the defendant with bribery in that he corruptly accepted free trips and gifts. The government moved for an order determining that evidence of trips and gifts from two entities not identified by name in Count Four – Vendor-1 and Vendor-2 – would be admissible at trial as direct evidence of the offense charged or, alternatively, under Rule 404(b).

---

1 *See* Dkt. 154.

The Court ruled that the evidence would be received as direct evidence of that offense.[2] The defendant now seeks reconsideration of that ruling.

In criminal cases, "[e]vidence of any other crime, wrong, or act"[3] is inadmissible under Federal Rule of Evidence 404(b) "to prove a defendant's criminal propensity."[4] Courts sometimes refer to evidence of other crimes, wrongs, or acts under Rule 404(b) as "extrinsic" evidence because it is "unrelated to the charged crime."[5] Rule 404(b), however, does not apply to "intrinsic" evidence of acts related to the charged crime.[6] Courts often refer to such evidence as "direct evidence" of the crime charged.[7]

Despite the general agreement that Rule 404(b) does not apply to "direct" or "intrinsic" evidence, the scope of what constitutes direct evidence has not been defined precisely. The Second Circuit has described it as including "evidence of uncharged criminal activity," if such evidence "arose out of the same transaction or series of transactions as the charged offense," "is

2 Dkt. 154, ¶ 1.

3 Fed. R. Evid. 404(b)(1)).

4 *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020), *cert. denied*, No. 20-464, 2021 WL 78122 (Jan. 11, 2021).

5 *See, e.g.*, *United States v. Van Putten*, No. 04-cr-803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005) (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)); 2 Weinstein's Federal Evidence § 404.12 (2021).

6 2 WEINSTEIN'S FEDERAL EVIDENCE § 404.12 (2021); *see also United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989); *Carboni*, 204 F.3d at 44.

7 *See, e.g.*, *United States v. Scott*, 677 F.3d 72, 77 (2d Cir. 2012).

This usage should not be confused with the use of "direct evidence" as compared with "circumstantial evidence."

inextricably intertwined with the evidence regarding the charged offense," or "is necessary to complete the story of the crime on trial."[8] By its wording, however, this description of direct evidence relates only to "uncharged criminal activity." It does not purport to describe the most basic form of direct evidence of a crime – evidence that is probative of the crime charged.[9] Indeed, such evidence may be probative either because it is "direct" as distinguished from circumstantial evidence of the crime charged or because the evidence is simply circumstantial evidence of that offense. Courts often use the term "direct evidence" more broadly to refer to evidence that clearly is related to the charged criminal activity and is probative – either directly or circumstantially – of any of the charged crime's elements.[10]

Evidence that the defendant accepted things of value from Vendor-1 and Vendor-2 falls within the scope of direct or intrinsic evidence of the scheme charged in Count Four. Count Four charges that the defendant corruptly accepted things of value from "vendors of Melrose CU,

---

8 *Towne*, 870 F.2d at 886 (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983) (quotations omitted)).

9 This is clear from the Second Circuit's opinion in *Towne* as well as later opinions. In *Towne*, the Court distinguished between "evidence . . . admitted to show" possession of a pistol – an element of the charged crime – and evidence arising out of the same transaction or series of transactions, inextricably intertwined with the charged offense, or necessary to complete the story. Likewise, in *Scott*, 677 F.3d at 77, the Court distinguished between "direct evidence" and evidence that is "otherwise inextricably intertwined with the charged act," both of which "may be admissible without being subject to Rule 404(b)." (emphasis added).

10 *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008) ("[Defendant's gang's] involvement in narcotics trafficking was an element of the charged offenses, and as a result, evidence of narcotics trafficking is not prior act evidence, but rather direct evidence of the charged offense."); *United States v. Williams*, 496 F. App'x 147, 149 (2d Cir. 2012) (in bribery case, evidence "relevant to" defendant's receipt of bribes admissible "as *direct evidence* of the charged crime") (quotations omitted); *United States v. Tutiven*, 40 F.3d 1, 5 (1st Cir. 1994) ("[I]ntrinsic circumstantial evidence directly probative of" an element of the crime is not subject to Rule 404(b)); *see also* 2 Weinstein's Federal Evidence § 404.20 (2021) ("[A]cts are intrinsic to the charged offense if they are direct evidence of guilt.").

*including* Media Company-1, Media Company-2, and Sports Company-1 with the intent to be influenced and rewarded in connection with business and a transaction of such institution."[11] The use of the word "including" means that reference to the two media companies and sports company were merely illustrative of the sources of the alleged bribes, not the entire universe. Evidence that the defendant repeatedly accepted vacations and meals from Vendor-1 and Vendor-2 in connection with MCU's business – and in violation of MCU's corporate policies – is probative of the elements of the charge. In any case, even if this evidence were not directly probative of the commission of the charged offense, it nevertheless would be intrinsic to it because the acceptance of those benefits allegedly "arose out of the same transaction or series of transactions as the charged offense," is "inextricably intertwined" with the evidence regarding the charged offenses, and is "necessary to complete the story of the crime on trial."[12]

Finally, the government's representations about Count Four over a year ago do not change this calculus. The defendant argues essentially that the government stated in response to his motion for a bill of particulars that Count Four related only to "vacations from media vendors."[13] That is not a fair interpretation of the government's statements. In its opposition to the defendant's request for a bill of particulars, the government made clear that it neither had "identif[ed] every

11 Indict. ¶ 32; 18 U.S.C. § 215(a)(2); *see also United States v. McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990).

12 *See United States v. Capoccia*, 247 F. App'x 311, 317 (2d Cir. 2007); *United States v. Graham*, No. 16-cr-786-2 (NSR), 2019 WL 2366724, at *7 (S.D.N.Y. May 31, 2019); *United States v. Inniss*, No. 18-cr-134 (KAM), 2019 WL 6999912, at *5 (E.D.N.Y. Dec. 20, 2019).

13 *See* Dkt. 164 at 9.

single MCU vendor" nor "every single trip [the defendant] took" in the indictment.[14] And although the defendant takes issue with the government's characterization of Count Four at oral argument as relating to "various transactions, but they are all of the same type. *They are all just the vacations from media vendors,*"[15] this remark was not made in the context of the defendant's motion for a bill of particulars.[16] It was made regarding his codefendant's motion to sever.[17] In that context, the government was not representing that its proof at trial would be limited to "just . . . vacations from media vendors." Rather, it was summarizing the "relative complexity" of the two bribery schemes in order to assist the Court in determining whether the case should be severed.[18]

## *II. Evidence of the Defendant's Deferred Compensation Plan*

The defendant next requests that the Court reconsider its holding that evidence of the defendant's deferred compensation plan, which defendant allegedly obtained without the consent of a majority of MCU's board of directors in violation of New York banking law, is admissible

---

14 Dkt. 34 at 41. Similarly, the fact that the government characterized Count Four in the facts section of its opposition as "a count related to the scheme alleged with respect to accepting gifts from the media company" does not preclude it from offering evidence about other vendors. *See* Dkt. 34 at 7. The allegations in Count Four explicitly name more than one company. A fair reading of this statement dictates that the government merely was summarizing the scheme charged in Count Four.

15 Dkt. 39 at 24 (emphasis added).

16 Dkt. 164 at 6, 9.

17 Dkt. 39 at 23.

18 Dkt. 172 at 5.

under Federal Rule of Evidence 404(b).[19] Because this extrinsic evidence is admissible under Rule 404(b), the defendant's request is denied.

"The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach'" and therefore allows the admission of extrinsic evidence "'for any purpose other than to show . . . propensity.'"[20] To determine whether extrinsic evidence properly is admitted under Rule 404(b), courts consider whether: "(1) the [extrinsic] evidence [is] offered for a proper purpose; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweigh[s] the danger of its unfair prejudice; and (4) the court administer[s] an appropriate limiting instruction."[21]

Here, evidence of the defendant's allegedly unlawful deferred compensation plan, which is unrelated to charged criminal activity, properly is admitted under Rule 404(b) to prove the defendant's corrupt intent.[22] Though the defendant claims that the Court's previous ruling on this point "overlooked" *United States v. Garcia*[23] in holding this evidence admissible under Rule 404(b),

---

19 Dkt. 164 at 10.

20 *Garcia*, 291 F.3d at 136 (quoting *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)).

21 *Garcia*, 291 F.3d at 136.

22 Dkt. 154 ¶ 4; *see also United States v. McCallum*, 584 F.3d 471, 475-76 (2d Cir. 2009) (finding Rule 404(b) evidence admissible in government's case-in-chief to show intent where intent was "sufficiently in dispute for the similar acts evidence to be relevant and hence admissible"); *see also United States v. Wedd*, No. S 2 15 CR. 616 (KBF), 2017 WL 11488608, at *4 (S.D.N.Y. Apr. 3, 2017) (collecting cases where evidence was admitted under Rule 404(b) to show knowledge, intent, or lack of mistake).

23 291 F.3d 127 (2d Cir. 2002).

he is mistaken.

In *Garcia,* the Second Circuit held that extrinsic evidence is admissible under Rule 404(b) only where "[t]he government . . . identif[ies] a similarity or connection between" the extrinsic evidence and the charged acts that makes extrinsic evidence "relevant to" the charged acts.[24] Here, the government has shown that securing an unlawful deferred compensation plan from MCU is sufficiently "similar[] or connect[ed]" to accepting bribes in connection with MCU's business because both acts involve breaches of the defendant's duties to MCU for the purpose of enriching himself at MCU's expense. And – as the defendant himself previously has argued – such a breach of duty is fundamental to corrupt intent in the bribery context.[25]

To be abundantly clear, evidence of the defendant's deferred compensation plan is not being admitted for the purpose of showing that he has a propensity for criminal behavior and therefore must have committed the bribery crimes charged in the indictment. Rather, it is being admitted for the purpose of showing that he repeatedly breached his duties to MCU during the relevant period and therefore it is "less probable" that he was acting in good faith when, as MCU's chief executive officer, he allegedly accepted the "things of value" described in the indictment.[26] Arguably, the difference between these two purposes is subtle, but that does not mean that the latter

---

24 *Garcia*, 291 F.3d at 137.

25 Dkt. 29 at 20-21 (quoting H.R. Rep. No. 99-335, at *5 (1985) (The "purpose of a bank bribery offense is 'to deter instances of corruption in the bank industry where efforts are made to undermine an employee's fiduciary duty to his or her employer.'")). *Cf. United States v. Rooney*, 37 F.3d 847, 852 (2d Cir. 1994) (recognizing that "'[t]he common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty.'") (quoting *United States v. Zacher*, 586 F.2d 912, 915 (2d Cir.1978)).

26 Fed. R. Evid. 401.

purpose is improper. The reality is that extrinsic evidence is often "critical" as "the only means of ascertaining . . . mental state . . . by drawing inferences from conduct."[27] Courts thus are inclined to admit such evidence when the defendant's intent is disputed and it will tend to prove it circumstantially.[28]

Finally, the probative value of this evidence substantially outweighs any danger of unfair prejudice. Securing a deferred compensation plan that violated New York banking law is no worse or shocking than the criminal bribery schemes charged.[29] Moreover, the defendant already has advanced a number of arguments for why the charged actions were not done with corrupt intent, so evidence tending to rebut this defense is highly probative.[30] Though the defendant argues that

---

27 *United States v. Huddleston*, 485 U.S. 681, 685 (1988).

28 *See United States v. Sinclair*, 74 F.3d 753, 761 (7th Cir. 1996) (in 18 U.S.C. § 215(a)(2) bribery case, finding no error in admission of evidence under Rule 404(b) regarding defendant's compliance with bank's code of conduct despite the evidence's "slight tendency to show [defendant's] propensity to commit wrongs" because "its predominant effect pertained to the legitimate purpose of proving his intent."); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) (finding prior criminal act admissible to prove that the defendant "had the requisite state of mind in committing the offense charged"); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("[w]here a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

29 *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009).

30 *See* Dkt. 29 at 7, 16-18, 20-22; Dkt. 60 at 6; Dkt. 113 at 14. For instance, the defendant has argued that he did not act corruptly when he gave loans to Tony Georgiton because there is no allegation that the loans resulted from his circumvention of the MCU Board's authority or that they "were unfair to MCU" or "out of the ordinary course." Dkt. 29 at 17-18. Likewise, the defendant has argued that he did not act corruptly when he accepted meals and trips from MCU's vendors because there is no allegation that, in doing so, he breached his fiduciary duty to MCU. *Id.* at 20-21.

it would take "a mini-trial" to present proof of the deferred compensation plan,[31] the probativeness of this evidence to the core issue of intent outweighs any danger of delay. Further, any prejudice resulting from the "sensational" nature of the plan (in terms of its $8 million value or otherwise)[32] can and will be remedied by the Court's issuance of an appropriate limiting instruction.[33]

### *III. Evidence of Meals with Vendor-1 and Vendor-2 that Violated MCU Policy*

Lastly, the defendant requests that the Court reconsider its holding that evidence that the defendant caused MCU to pay for more than $20,000 in meals with Vendor-1 and Vendor-2 in violation of MCU's corporate policies is admissible under Rule 404(b).[34] Like the evidence of the deferred compensation plan, this extrinsic evidence properly was admitted under Rule 404(b) for the purpose of proving intent. It satisfies *Garcia* because it relates to the defendant's repeated violation of his duties to MCU with respect to vendors, which is at the core of the bribery scheme in Count Four. As mentioned, such a pattern makes it less probable that he was acting in good faith when he allegedly accepted things of value from MCU's vendors, which is a proper purpose for admission under Rule 404(b).[35]

Moreover, the probative value of this evidence substantially outweighs any danger

---

31 Dkt. 164 at 13.

32 *Id.*

33 *See United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir.2006) (noting that "the law recognizes a strong presumption that juries follow limiting instructions").

34 Dkt. 104 at 9-10.

35 *See Sinclair*, 74 F.3d at 761.

of unfair prejudice. It is relevant to the hotly disputed issue of the defendant's intent, so it is highly probative. And it is no more sensational than the direct evidence in this case. Any residual prejudice to the defendant will be mitigated with an appropriate limiting instruction at trial.

Accordingly, the defendant's motion for reconsideration [Dkt. 164] is denied.

SO ORDERED.

Dated: February 25, 2021

Lewis A. Kaplan
United States District Judge