UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :

UNITED STATES OF AMERICA           :

                                        :

         - v. -                 :       19 Cr. 504 (LAK)

                                        :

ALAN KAUFMAN,                   :

                                        :

              Defendant.        :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ALAN KAUFMAN'S MOTION FOR A NEW TRIAL

PETRILLO KLEIN + BOXER LLP
Nelson A. Boxer
Christina Karam
655 Third Avenue, 22nd Floor
New York, NY 10017
Telephone: (212) 370-0330

*Attorneys for Alan Kaufman*

## PRELIMINARY STATEMENT

In opposing Mr. Kaufman's motion for a new trial on the basis of newly discovered evidence of venue, concerning the location of the 2010 closing for the Jericho Residence, the government "assumes" that the closing took place on Long Island, rather than in Manhattan. Gov't Br. at 10 n.1.  The government does not address whether it knew (or should have known) that the closing took place on Long Island and nonetheless argued to the jury—for the first time in its summation—that the closing took place in Manhattan and that venue in this District was therefore proper for the gratuity charged in Count Two.  The government also ignores the November 23, 2010, email from Mr. Reiver to Mr. Kaufman—which was attached as an exhibit to a brief Mr. Kaufman filed the day before trial, *see* Dkt. 188-1—in which Mr. Reiver states that the closing was to take place on Long Island, and does not address its communications with Mr. Reiver, the only one of the government's witnesses who attended the closing.

Instead of confronting these facts, the government argues that Mr. Kaufman's evidence concerning the location of the 2010 closing is not "newly discovered" because Mr. Kaufman attended the closing and necessarily knew its location pre-trial.  The precedents upon which the government relies do not support this proposition; in assessing whether testimonial evidence is "newly discovered," Second Circuit case law focuses on the defendant's knowledge before or during trial of a witness's ability to provide material testimony, and Mr. Kaufman could not have known before or during trial that Mr. Weiss or Mr. Reiver could provide material testimony about the location of the 2010 closing, because the location of the closing was not material until the government argued in summation that it was a basis for venue.

The government also resurrects two of its prior arguments to this Court as to why it proved venue on Count Two (one of which it did not pursue on appeal), even if the 2010 closing

1

occurred on Long Island.  To the extent the Court did not already reject these arguments in

deciding Mr. Kaufman's Rule 29 motion, the Court should do so now and hold that Mr.

Kaufman's "newly discovered" evidence would likely result in an acquittal on Count Two on

venue grounds.

Mr. Kaufman's venue challenge is not only a constitutional one, but also one of fairness:

the government made much of the 2010, $630,000 purchase price of the Jericho residence, an

amount that may have been understood as less consequential by a jury that included residents of

Long Island; the value to the Credit Union of the "Melrose Ballroom" was also hotly contested,

and Queens residents on the jury may have better understood the proximity of the taxi industry to

the Melrose Ballroom; and, while we appreciate that Mr. Kaufman was convicted of a second

gratuity, the restitution and home forfeiture orders were grounded solely on Count Two, not

Count Four, and Mr. Kaufman should otherwise be sentenced solely on the basis of the CBS

Radio gratuity conviction.

## **ARGUMENT**

### I.     **Mr. Kaufman's Proffered Evidence Is "Newly Discovered" and Could Not Have Been Discovered with Due Diligence Before or During Trial.**

Relying on the Second Circuit's decision in *United States v. Owen*, 500 F.3d 83 (2d Cir.

2007), the government claims that evidence concerning the location of the 2010 closing is not

"newly discovered" because Mr. Kaufman, who attended the closing, "was clearly aware" of its

location before trial.  Gov't Br. at 11.  The government misreads *Owen*.  In *Owen*, the Second

Circuit joined a majority of Courts of Appeal that have held that "when a defendant is aware that

his codefendant could provide exculpatory testimony but is unable to obtain that testimony

because the codefendant invokes his privilege against self-incrimination prior to and during trial,

the codefendant's postconviction statement exculpating the defendant is not 'newly discovered

evidence' within the meaning of Rule 33." *Owen*, 500 F.3d at 88-89.  The Court explained:

"[W]here . . . a defendant knew or should have known[] that his codefendant could offer material

testimony as to the defendant's role in the charged crime, the defendant cannot claim that he

'discovered' that evidence only after trial."  *Id.* at 91.  In assessing whether testimonial evidence

is "newly discovered" within the meaning of Rule 33, the *Owen* Court did not rely on a

defendant's knowledge of the actual testimony—*e.g.*, material facts concerning the defendant's

"role in the charged crime," of which the defendant presumably is aware.  Rather, the Court's

focus was on the defendant's awareness of a witness's *ability to provide* material testimony

subsequent to trial.  *Owen*, 500 F.3d at 89 ("[W]e . . . hold that Rule 33 does not authorize

district courts to grant new trials on the basis of . . . evidence [that] is not newly discovered, but

merely newly available."); *accord United States v. Forbes*, 790 F.3d 403, 409 (2d Cir. 2015)

("[I]f the reason that testimonial evidence was unavailable at trial was the defendant's failure to

call a witness *that he knew could provide exculpatory testimony*, a new trial on the basis of newly

discovered evidence would not be warranted.") (emphasis added).

Accordingly, whether or not Mr. Kaufman knew before trial that the 2010 closing took

place on Long Island is irrelevant to deciding his Rule 33 motion.  The relevant question is

whether Mr. Kaufman knew or should have known before or during trial that Mr. Weiss or Mr.

Reiver "could offer material testimony" as to the location of the 2010 closing and failed to

question them or call them to testify.  *Owen*, 500 F.3d at 91 ("There may be cases where a

codefendant's post-trial testimony does indeed constitute newly discovered evidence.  But

where, as in this case, a defendant knew or should have known, that his codefendant could offer

material testimony as to the defendant's role in the charged crime, the defendant cannot claim

that he 'discovered' that evidence only after trial."); *see Forbes*, 790 F.3d at 409.  The answer to

that question is "No," because the government argued for the first time during its summation that Mr. Kaufman's attendance at the 2010 closing in Manhattan was a basis for venue in this District.  Before the government's summation, the location of the 2010 closing was immaterial.

While the government argues that its "presentation of evidence is not relevant to the question of whether evidence is newly discovered," Gov't Br. at 12, the cases it cites do not agree.  For example, in *United States v. DeSimone*, 947 F. Supp. 2d 216 (N.D.N.Y. 2013), the defendants, who were convicted of releasing a reportable quantity of asbestos, argued that evidence that one of the government's witnesses tested the samples containing asbestos post-sampling rather than at the time of sampling was "newly discovered," and could not have been discovered with due diligence before or during trial, because the government had given the "clear impression" that sampling and testing had occurred contemporaneously.  The district court rejected the defendants' argument, reasoning that "an 'impression' given by the government in its presentation of evidence does not relieve the defendants of the obligation to pursue all relevant facts related to the evidence presented by the government," and that defense counsel could have cross-examined the witness as to the timing of testing—which was, in any event, impeachment evidence rather than evidence that would have led to a different result.  *Id.* at 220-21.[1]

*DeSimone* is distinguishable.  The government in the instant case gave more than a mere "impression" that its evidence supporting venue in this District on Count Two did not include the location of the 2010 closing for the Jericho Residence.  Specifically, in response to a Rule 29

---

[1]     Similarly, in *United States v. Jimenez-Mora*, 104 F.3d 354 (Table), 1996 WL 636559 (2d Cir. 1996), the government disclosed before trial that misconduct of a government witness had been alleged but suggested that the allegations were "without substance."  *Id.* at *1.  The Second Circuit held that the misconduct was not "new evidence" because defense counsel could have nonetheless pursued the misconduct allegations on cross-examination.  *Id.*

motion made at the close of its case, the government argued that venue was proper on three grounds, which did not include Mr. Kaufman's attendance at Mr. Georgiton's 2010 closing; only after the close of Mr. Kaufman's case, during summation, did it argue this venue ground to the jury.  In addition, the defense in *DeSimone*, in reliance on an "impression" given by the government about its evidence, chose not to pursue a line of cross-examination that it could have otherwise easily pursued.  Here, in contrast, defense counsel did not cross-examine any government witness or examine Mr. Kaufman about the district in which the 2010 closing occurred because the government did not elicit such testimony, from Mr. Reiver or anyone else, and had not argued that Mr. Georgiton closed on the house in Manhattan and therefore venue on Count Two was proper.[2]

The government also claims that Mr. Kaufman did not "exercise due diligence after summations on March 29, 2021," when he was first made aware of the government's factual basis for venue, because he emailed Mr. Weiss in March of this year.  Gov't Br. at 13.  But Rule 33's due diligence requirement is concerned with whether the defendant could have discovered the evidence "before or during trial."  *Owen*, 500 F.3d at 87.  The defendant's due diligence or alleged lack thereof after trial is irrelevant, as long as the Rule 33 motion is made within three years after a guilty verdict, and the government does not dispute the timeliness of Mr. Kaufman's motion.  And Mr. Kaufman was constrained by the trial record in his Rule 29 and 33 motions and in his Second Circuit appeal.

---

[2] It bears repeating that, although the Court permitted defense counsel to go beyond the scope of Mr. Reiver's direct examination because the government added Mr. Reiver to its witness list after Mr. Kaufman had subpoenaed him (another fact the government disregards in its brief), to avoid Mr. Reiver being called to the stand twice, the Court cautioned that if in doing so defense counsel "inadvertently . . . supplied the only evidence sufficient to make the government's *prima facie* case," it was unclear whether the Court could "consider evidence that came in in this fashion in ruling on a Rule 29 motion." Tr. 538-39.  Thus, Mr. Kaufman's ability to question Mr. Reiver about topics that went beyond the scope of Mr. Reiver's direct examination, such as the location of the 2010 closing, was not unfettered.

Accordingly, Mr. Weiss's anticipated testimony, and Mr. Reiver's anticipated testimony if he was subpoenaed,[3] about the location of the 2010 closing for the Jericho Residence is "newly discovered" after trial, and Mr. Kaufman could not have discovered it with due diligence before or during trial.

## II.   Mr. Kaufman's Proffered Evidence Would Likely Result in an Acquittal on Count Two.

While both this Court (Dkt. 242 at 31) and the Second Circuit (No. 21-2589, Dkt. 100-1 at 5-6) concluded that the government had met its burden of proof on venue on Count Two *on the sole basis* that Mr. Kaufman attended Mr. Georgiton's 2010 closing in Manhattan, the government asks this Court to revisit and rely on two of its prior arguments with respect to venue.  The Court should reject each.

*First*, the government argues that venue was proper in this District because it "introduced evidence that the Melrose Ballroom naming rights agreement was, in part, negotiated and prepared in Manhattan."  Gov't Br. at 15.  Specifically, the government claims that it "introduced multiple emails showing that [a] Manhattan-based lawyer, Ellen Walker, sent emails from her office during the course of the negotiations, including the fully-executed naming rights agreement."  *Id.*  (Ms. Walker negotiated the contract on behalf of Harama Entertainment, a company part-owned by Mr. Georgiton; Mr. Reiver represented Melrose.)  But there is no evidence that Ms. Walker sent the emails upon which the government relies, GXs 798 and 818, from her office in Manhattan; the emails simply include the office address in her signature block. *Cf. United States v. Teman*, 465 F. Supp. 3d 277, 312-13 (S.D.N.Y. 2020) (concluding that "a

---

[3]      Referring solely to Mr. Weiss's email to Mr. Kaufman, Dkt. 299-1, the government claims that "it is unclear what admissible evidence would establish that the closing took place on Long Island."  Gov't Br. at 10 n.1.  Mr. Weiss's anticipated testimony, as well as Mr. Reiver's anticipated testimony if he was subpoenaed, each would establish this fact.

reasonable juror could find that [defendant's] mobile deposit of [fraudulent] checks was made via a mobile device then located in Manhattan" based on evidence that IP address of defendant's mobile deposits was listed as "New York, NY" on bank records).

Additionally, venue is proper in a district only if:  (1) an act in furtherance of the "essential conduct" of the crime charged took place in that district, *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (internal quotation marks omitted); and (2) either (a) the defendant intentionally or knowingly caused that act to occur in the district of venue, or (b) it was "reasonably foreseeable" to the defendant that such an act would occur in the district of venue. *See United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012); *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).  Even if Ms. Walker's signature block were enough to show that she and Mr. Reiver exchanged emails to and from Manhattan in negotiating the naming rights agreement, Ms. Walker's negotiations do not satisfy either venue requirement.  There was no evidence that Ms. Walker was involved in the gratuity offense's "essential conduct":  Mr. Kaufman had already proposed the naming rights agreement to Melrose's Board of Directors, and the Board had already considered comparable agreements and then approved the agreement, by the time Ms. Walker and Mr. Reiver negotiated terms such as "morals" and conflict-of-interest provisions and a payment schedule.  *See* GX 207Q at 2 (Melrose Bd. Minutes, Sept. 2011); Tr. 658 (Reiver cross); Tr. 255 (Benjamin cross).  And while it may have been "reasonably foreseeable" to Mr. Kaufman that Melrose would need to negotiate the terms of the naming rights agreement, there was no evidence that it was "reasonably foreseeable" to Mr. Kaufman that negotiations would cause an act or event to happen in Manhattan, especially when Mr. Kaufman knew that Harama had a business address in Queens and that the Melrose Ballroom itself was in Queens.[4]

---

[4]      It is perhaps for all of these reasons that the government did not pursue this venue argument on appeal.  *See* No. 21-2589, Dkt. 69 at 28-29.

*Second*, the government argues that it proved venue on Count Two because Mr. Kaufman "retained a title agency located in Manhattan to facilitate the purchase" of the Jericho Residence from Mr. Georgiton in 2013, and "[a]s a result . . . caused the title agency to send electronic communications (from Manhattan) related to [his] purchase." Gov't Br. at 14. This argument fails. As with Ms. Walker's emails, the government did not introduce any evidence that the sole email on which it relies, a December 20, 2012, email from the title agency to Mr. Reiver attaching the title commitment, GX 311, was sent from Manhattan; the email simply lists a Manhattan address for the title agency.

Additionally, while the government claims that "[o]btaining the title commitment was a necessary and essential step to [Mr.] Kaufman receiving and accepting one of the alleged gratuities, *i.e.*, the Jericho Residence," Gov't Br. at 14, the government does not satisfy its burden on venue merely by showing that that an act that took place in the district was "necessary in a 'but-for' sense to the ultimate success of defendant's scheme." *United States v. Bezmalinovic*, 962 F. Supp. 435, 438 (S.D.N.Y. 1997); *see United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (vacating insider trading conviction where "[a]lthough [defendant's] original thefts [of confidential information from an investment bank in Manhattan] may have set in motion the chain of events ultimately leading to [insider] trades, venue cannot be grounded merely on [the] initial misappropriation and the fact that the information originated in New York").[5]

---

[5]    Additionally, no rational juror could have concluded that Mr. Kaufman's retention of a title agency in Manhattan furthered the "essential conduct" of the gratuity offense, because Mr. Kaufman's purchase of the Jericho Residence in 2013 was not the alleged gratuity; rather, it was $240,000 of the purchase price that Mr. Georgiton did not require Mr. Kaufman to pay. *See, e.g.*, Tr. 1072 ("For delivering on that $2 million, [Mr. Kaufman] got his reward. About a month after that $400,000 check went out for the first payment for the ballroom, Tony Georgiton gave Kaufman $240,000."); Tr. 1099-1100 ("After Kaufman delivered on December 12, 2012, with that check, Kaufman got his reward because only a month later Georgiton gave him $240,000"); *see also* Tr. 15 (government's opening

Because the government has not articulated another valid basis for venue in this District,

Mr. Kaufman's newly discovered evidence as to the location of the 2010 closing would likely

result in an acquittal on Count Two on venue grounds.

## CONCLUSION

For the reasons set forth above and in his prior submission, the Court should grant Mr.

Kaufman's motion for a new trial on Count Two.

Dated:          June 21, 2023                    Respectfully submitted,
                New York, New York

                                                 PETRILLO KLEIN + BOXER LLP


                                        By:  _/s/ Nelson A. Boxer_____
                                             Nelson A. Boxer
                                             Christina Karam
                                             655 Third Avenue, 22nd Floor
                                             New York, NY 10017

                                             *Attorneys for Alan Kaufman*

---

statement) ("Tens of millions of dollars of loans with special loan terms.  And he did it while living in Georgiton's condo rent free.  After he approved these loans, the defendant got a reward.  Georgiton gave the defendant that [sic] almost [a] quarter million dollars.").  The government did not argue (and indeed, there was no evidence) that any action in furtherance of that understanding occurred in the Southern District of New York.