UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-12-2023
```

-against-                                              19-cr-504 (LAK)

ALAN KAUFMAN,

                  Defendant.
------------------------------------x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on defendant Alan Kaufman's motion for a new trial on Count Two of the indictment on the basis of alleged "newly discovered evidence."[1] (Dkt 297)

*Background*

        The indictment charged Kaufman in three counts: (1) Count One charged him with conspiring to violate the bank bribery statute in connection with his receipt of things of value from Tony Georgiton, in violation of 18 U.S.C. §§ 371, 215(a)(1), and 215(a)(2); (2) Count Two charged him with accepting a thing of value greater than $1,000 from Georgiton, with the intent to be influenced or rewarded in connection with the business of Melrose Credit Union ("Melrose"), of which Kaufman was the treasurer and chief executive officer, in violation of 18 U.S.C. §§ 215(a)(2) and 2; and (3) Count Four charged him with accepting lavish vacations and other gifts in excess of $1,000 from CBS Radio, with the intent to be influenced or rewarded in connection with the

---

[1] *See* Fed. R. Crim. P. 33(b)(1).

2

business of Melrose, in violation of 18 U.S.C. §§ 215(a)(2) and 2.[2] After a two-week trial, the jury returned a guilty verdict on Counts Two and Four and a verdict of not guilty on Count One.

Count Two alleged that Kaufman accepted things of value from Tony Georgiton, including free housing, in exchange for Kaufman's approval of favorable terms on loans extended to Georgiton's companies, as well as for his central role in causing Melrose to pay $2 million to a company partially owned by Georgiton for the naming rights to a ballroom in Queens, New York (the "Melrose Ballroom"). In or about 2010, Georgiton offered to buy a house of Kaufman's choosing and to allow him to live in that house without paying rent.[3] Kaufman selected a house in Nassau County (the "Jericho Residence"), which Georgiton purchased for approximately $630,000.[4] Georgiton allowed Kaufman to live in the Jericho Residence for more than two years without paying rent.[5]

At trial, the government was required to prove, by a preponderance of the evidence, that venue was proper in this district with respect to Count Two.[6] Thus, it was obliged to prove that it was more likely than not that some act or communication in furtherance of the charged offense occurred in this district and that it was foreseeable to the defendant that such an act or

---

[2] See Dkt 1.

[3] Tr. 595; GX-901F.

[4] Tr. 596, 883; GX-312.

[5] Tr. 596–97.

[6] Tr. 1187.

communication would happen.[7]

Kaufman testified at trial that the closing of Georgiton's 2010 purchase of the Jericho Residence, which he attended, occurred "at the seller's attorney's office."[8] There was documentary evidence stating that the seller's attorney's office was located in Manhattan.[9]

Now, in support of his motion for a new trial, Kaufman offers alleged "newly discovered evidence," which he claims shows that the 2010 closing actually occurred on Long Island – i.e., in the Eastern District of New York.[10]

*Discussion*

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, . . . it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances."[11] The Second Circuit has articulated the standard as follows:

> "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must

---

[7] *See* Tr. 1187.

[8] Tr. 930.

[9] *See* GX-306 at 11.

[10] Dkt 298, at 1.

[11] *United States v. Ghailani*, 761 F. Supp. 2d 167, 195 (S.D.N.Y. 2011) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)) (internal quotation marks omitted).

examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted."[12]

Where, as here, the motion for a new trial is based on a claim of "newly discovered evidence," the defendant must establish that: (1) the evidence is "new," i.e., it was discovered after trial; (2) the evidence could not have been discovered before or during trial with the exercise of due diligence; and (3) the evidence is "so material and noncumulative that its admission 'would probably lead to an acquittal.'"[13] Such motions are disfavored in this Circuit and "should be granted only with great caution."[14]

The Court assumes for purposes of this motion, without deciding, that the 2010 closing took place on Long Island, as asserted in Kaufman's motion. Accordingly, the question before the Court is whether that assumed fact, were it true, would so have impaired Kaufman's constitutional rights and resulted in a manifest injustice.[15]

As a threshold matter, the defendant's motion fails because his proffered evidence is not "newly discovered" within the meaning of Rule 33. The Second Circuit has held that it is

---

[12] *Ferguson*, 246 F.3d at 134 (internal quotation marks and citations omitted).

[13] *United States v. Zagari*, 111 F.3d 307, 322 (2d Cir.1997) (quoting *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992)).

[14] *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (citations and quotation marks omitted); *see also United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) ("Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict.").

[15] *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007) ("The test is whether it would be a manifest injustice to let the guilty verdict stand." (citations and quotation marks omitted)).

5

"axiomatic" that "[o]ne does not 'discover' evidence after trial that one was aware of prior to trial."[16] It is undisputed that Kaufman attended the 2010 closing on the Jericho Residence.[17] Accordingly, the evidence proffered by Kaufman is not "newly discovered" because he had direct knowledge of the location of the 2010 closing prior to trial.[18] Furthermore, given Kaufman's personal knowledge, it simply cannot be that the location of the closing could not have been discovered before trial with the exercise of due diligence.

Kaufman argues that the evidence nevertheless is "newly discovered" because he did not know that the government would use the location of the 2010 closing as a factual basis for venue until closing arguments.[19] In other words, he argues that the location of the 2010 closing appeared to him to be immaterial prior to the government's summation and thus he could not have known before or during trial that he or anyone else could provide material testimony about that fact.[20]

This argument is unpersuasive. As a factual matter, Kaufman challenged venue both before and during trial and therefore knew, or should have known, that venue was disputed and that evidence regarding the location of the 2010 closing was or might prove material.[21] Furthermore,

---

[16] *United States v. Owen*, 500 F.3d 83, 89–90 (2d Cir. 2007).

[17] *See* Dkt 303, at 2; Tr. 930 (Kaufman testifying that he was present at the 2010 closing).

[18] *See Owen*, 500 F.3d at 84 ("Because [Owen's co-defendant's] testimony related to his direct dealings with Owen, Owen was—or certainly should have been—aware of the substance of [the co-defendant's] testimony prior to trial, and, thus, it was not 'newly discovered' within the meaning of Rule 33 when it was offered by [the co-defendant] at sentencing.").

[19] Dkt 298, at 7.

[20] Dkt 303, at 1.

[21] *See* Dkt 302, at 7–9.

6

Kaufman's proposed interpretation of "newly discovered evidence," if adopted, would expand the scope of that term beyond its textual limits, which the Second Circuit already has declined to do.[22] The failure of Kaufman and his counsel to develop evidence relevant to an issue that was in dispute at trial does not make that evidence newly discovered. Accordingly, Kaufman has failed to demonstrate that his motion is grounded on newly discovered evidence.

In all events, Kaufman's motion fails because he has not demonstrated that he probably would have been acquitted on Count Two had there been evidence in the record that the 2010 closing took place on Long Island. As set forth more fully in the government's opposition, there were multiple bases on which the jury reasonably could have found, by a preponderance of the evidence, that venue was proper as to Count Two.

In connection with Kaufman's purchase of the Jericho Residence from Georgiton in 2013, the indictment alleged and the government introduced evidence at trial that Kaufman retained a Manhattan-based title agency to facilitate that purchase.[23] Furthermore, the government introduced evidence that Kaufman caused the title agency to send electronic communications from Manhattan in furtherance of his purchase of the Jericho Residence, including transmission of the title commitment to Kaufman's attorney.[24] Based upon this evidence, a rational juror could have found,

---

[22] *Owen*, 500 F.3d at 89–90 ("It is axiomatic that where the words of a statute are clear, the words employed are to be taken as the final expression of the meaning intended. One does not 'discover' evidence after trial that one was aware of prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding. We are not inclined to expand the scope of Rule 33 beyond its textual limits." (citations and internal quotation marks omitted)).

[23] *See* Indictment ¶¶ 16, 21(d); GXs 311, 1101, 1104.

[24] *See* Dkt 302, at 14.

7

by a preponderance of the evidence, that venue was proper as to Count Two.[25]

Additionally, the government introduced evidence that the Melrose Ballroom naming rights agreement was negotiated and prepared, at least in part, in Manhattan. At trial, the government introduced evidence that Kaufman presented the naming rights proposal to the Melrose Board and persuaded them to approve a $2 million proposal while he was living rent-free in the Jericho Residence.[26] Following board approval of the naming rights proposal, Melrose's general counsel negotiated the naming rights agreement with Georgiton's Manhattan-based lawyer, Ellen Walker.[27] At trial, the government introduced multiple emails, in which Walker sent drafts or fully executed versions of the naming rights agreement to Kaufman and Melrose's general counsel and included her Manhattan office address in her signature block.[28] On the basis of that evidence, a rational juror could have found, by a preponderance of the evidence, that it was foreseeable that conduct in furtherance of the offense charged in Count Two would occur in this district.

Accordingly, even if the evidence cited in Kaufman's motion actually had been "newly discovered," it would not have been sufficiently material that its admission probably would have lead to an acquittal on Count Two.[29] As described above, venue was supported by sufficient

---

[25] *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in any district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offence to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue.").

[26] *See* Tr. 218–21.

[27] Tr. 657–59, 968.

[28] *See, e.g.*, GXs 798, 818.

[29] *See Zagari*, 111 F.3d at 322 (quoting *Siddiqi*, 959 F.2d at 1173).

8

alternative evidence and it is the Court's view that the jury likely would have found venue proper in this district even if the "newly discovered" evidence had been introduced. There has been no manifest injustice requiring a new trial.[30]

*Conclusion*

For the foregoing reasons, the defendant's motion for a new trial (Dkt 297) is denied in its entirety.

SO ORDERED.

Dated:   July 12, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[30] The Court notes also that the defendant was sentenced concurrently on Counts Two and Four to the same 46-month term of imprisonment. Sentencing Tr. 65–66. Thus, even if his conviction on Count Two were upset on grounds of improper venue, he ultimately would have been sentenced to the same term of imprisonment. The defendant acknowledges this, but nevertheless seeks a new trial because "the restitution and home forfeiture orders were grounded solely on Count Two, not Count Four, and [he] should otherwise be sentenced solely on the basis of [Count Four]." Dkt 303, at 2.