# PETRILLO KLEIN & BOXER LLP

655 Third Avenue
22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
www.pkbllp.com

Nelson A. Boxer
Direct Dial: (212) 370-0338
Cell: (917) 273-2693
nboxer@pkbllp.com

August 7, 2023

**By ECF**

The Hon. Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Alan Kaufman*, 19 Cr. 504 (LAK)

Dear Judge Kaplan:

      On behalf of Alan Kaufman, we respectfully submit this letter in further support of our July 25, 2023, letter motion for bail pending appeal of the denial of Mr. Kaufman's motion for a new trial based on newly discovered evidence, and for a stay of the Court's Preliminary Order of Forfeiture as to Specific Property and the collection of Mr. Kaufman's fine. Dkt. 309.

      With respect to Mr. Kaufman's request for bail pending appeal, the government contends that Mr. Kaufman's anticipated appeal "fails to raise a 'substantial' question of *fact*" because Mr. Kaufman attended the 2010 closing for the Jericho Residence and thus cannot show that he "discovered" the location of the closing after trial. Dkt. 310 at 3 (emphasis added). But the "substantial" legal question Mr. Kaufman's appeal raises is whether, based on the Second Circuit's opinions in *Owen* and *Forbes*, Mr. Weiss's and Mr. Reiver's anticipated testimony about the location of the 2010 closing is "newly discovered" within the meaning of Rule 33 when Mr. Kaufman did not know, and could not have known, before or during trial that testimony on this topic would be material, because (1) the location of the closing was not material until the government argued for the first time in summation that Mr. Kaufman's attendance at the closing in Manhattan was a basis for venue in this District, and because (2) the government has not yet addressed its knowledge of the location of the 2010 closing (e.g., from its trial preparation of Mr. Reiver and its ability to communicate with his counsel) at the time of its summation or thereafter. *See* Dkt. 309 at 3; Dkt. 298 at 5; Dkt. 303 at 2.

      The government also argues that Mr. Kaufman's anticipated challenge to the government's two alternative bases for venue—namely, whether the government can prove that an email was sent from Manhattan, and establish that venue is proper in this District, solely on the basis of a signature block listing a Manhattan-based address—also fails to raise a "substantial question," because "courts in this Circuit have found venue to be proper where a jury could reasonably conclude that the emails in question were sent or received in the relevant district."

August 7, 2023
Page 2

Dkt. 310 at 3-4.  But *United States v. Griffith*, on which the government relies, *id.* at 4, concerned a motion to dismiss an indictment on venue grounds, not a jury's assessment of the sufficiency of the evidence to prove venue.  *See United States v. Griffith*, No. 20-CR-15 (PKC), 2020 WL 4369650, at *1 (S.D.N.Y. July 29, 2020).  Moreover, *Griffith* itself cites *United States v. Gross*, which is distinguishable:  there, the Court concluded that a reasonable jury could have found that Gross sent the emails in question while in this District based on Gross's own testimony and other government evidence.  *See United States v. Gross*, No. 15-CR-769 (AJN), 2017 WL 4685111, at *38 (S.D.N.Y. Oct. 18, 2017), *aff'd sub nom. United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019) ("Gross himself testified that, in June 2014, he was in New York City for 'a conference'—i.e. the conference he mentioned in his June 7, 2014 e-mail. . . . Further, in his testimony, Gross referenced a credit card receipt for a meal at Rosa Mexicano, a restaurant in New York City, and stated that the receipt 'represent[ed] [he and others] going out to eat as pastors' as part of that conference. . . . The [g]overnment presented evidence that this meal occurred on June 6, 2014, by way of a credit card receipt.") (alterations in original).  Here, by contrast, neither Ms. Walker nor any employee of the Manhattan-based title company testified.  *United States v. Russell*, which *Griffith* also cites, is distinguishable for the same reason:  there, a government agent testified that he exchanged the emails in question with a conspirator and the conspirator's wife from his office within the Eastern District.  *See United States v. Russell*, No. 09-CR-968 DLI, 2014 WL 2558761, at *2, *6 (E.D.N.Y. June 5, 2014), *aff'd in part, rev'd in part and remanded sub nom. United States v. Lange*, 834 F.3d 58 (2d Cir. 2016).

      As for Mr. Kaufman's request to stay forfeiture of the Jericho Residence, the government argues that "[a] stay of forfeiture creates" various "risk[s]," including possible "fluctuations in property value[,] wear and tear to the property[,] and other risks attendant to property ownership," which a property sale would mitigate.  Dkt. 310 at 4.  The government does not explain how those risks—which were presumably present at the time the government agreed to stay forfeiture in November 2021—militate against a stay now.  Furthermore, the government's argument that, were he to prevail on appeal, Mr. Kaufman "would be entitled to the proceeds the [g]overnment obtained from the property sale, making him whole," Dkt. 310 at 4, ignores the fact that the property at issue is Mr. Kaufman's and his wife's home.  *See United States v. Grote*, 961 F.3d 105, 122 (2d Cir. 2020) (district court denied defendant's request to stay forfeiture of all assets included in the preliminary order of forfeiture but imposed "a stay as to the sale of the family residence").

      The government also contends that Mr. Kaufman's continued upkeep of the Jericho Residence does not benefit the government because "the funds he has been using to maintain the property should and will be used to pay restitution to the victim of his crimes," and it claims that Mr. Kaufman "has not made any payments towards his restitution obligation."  Dkt. 310 at 4, 5 n.3.  The government again fails to explain why the NCUA would be harmed by a stay now, as opposed to when the government previously agreed to stay forfeiture.  Moreover, Mr. Kaufman is not obligated to pay restitution until "the first day of the second month following the month in which [he is] released" from prison.  Dkt. 266 (Amended Judgment) at 7.

August 7, 2023
Page 3

      Finally, the government argues that the Court should not stay the financial components of Mr. Kaufman's sentence because of his "inability to show a likelihood of success on appeal." Dkt. 310 at 4.  Even if that were the case, courts may "grant[] a stay pending appeal where the likelihood of success is not high[,] but the balance of hardships favors the applicant," as it does here for the reasons explained *supra*.  *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002); *see* Dkt. 309 at 4-5.

      For these reasons and the reasons set forth in our July 25, 2023, letter, the Court should grant Mr. Kaufman bail pending appeal and stay forfeiture and the fine.

                                          Respectfully submitted,

                                          */s/ Nelson A. Boxer*
                                          Nelson A. Boxer
                                          Christina Karam
                                          655 Third Avenue, 22nd Floor
                                          New York, NY 10017

                                          *Attorneys for Alan Kaufman*